Carroll,
Mar. 7, 1950. } No. 3875.

UNITED STATES FIDELITY & GUARANTY COMPANY

*v.*

PAUL A. MINAULT & *a.*

*Charles F. Hartnett* and *Burnham B. Davis* (*Mr. Hartnett* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Louis C. Wyman* orally), for the defendant, Marjorie J. Hanson.

*Richard F. Upton* for Paul A. Minault, furnished no brief.

*Cooper, Hall & Cooper*, for the defandants Detscher, furnished no brief.

BLANDIN, J. The basic issue here is whether there was evidence to sustain the jury's finding that title to the Lincoln Zephyr car had not passed from the defendant Minault to the defendant Detscher at the time of the accident. We believe there was and since no errors appear in the record the plaintiff's exceptions are overruled.

The law here is that title passes when the parties intend it should. Their intention is a question of fact to be determined from the terms of the contract, the conduct of the parties and the surrounding cir-

cumstances. *Sandford* v. *Nickerson*, 91 N. H. 71; *Employers Assurance Company* v. *Sweatt*, 95 N. H. 31, 33. The bill of sale dated July 7, 1947, was drawn by Minault at a time when he understood the transaction was to be a cash sale on that date and he planned to take the money with him to Pennsylvania the next morning. On learning that it could not be an immediate cash sale and that Detscher or some member of his family must go to Concord to get the money, Minault later in the evening of that day had Mrs. Detscher write a promissory note of the same date and amount as the bill of sale, payable to himself, which Detscher then signed. Detscher testified after telling Minault a trip to Concord was necessary that the following conversation took place: "My wife was to drive his car with his permission to Concord the following morning . . . That was the agreement with Mr. Minault and with myself . . . At that time I asked him if, of course, it was all in accord with him that we use his car, and he was agreeable. I asked him at that time if we would be covered." The record subsequently discloses certain questions by one of defendants' counsel and Detscher's answer as follows:

"Did you at one time prior to July 7 own an automobile yourself? A. I did. Q. When had you disposed of that automobile? A. I don't remember the exact date, but it was January, or February, right along there. Q. Of 1947? A. That is right. Q. Did you carry public liability insurance on your own car prior to the time you disposed of it? A. I did . . . . Q. At the time you disposed of your car what did you do with reference to your liability insurance? A. Rather than have it cancelled I put it into a suspended status. Q. Why did you put it into a suspended status? A. So that—I didn't have any automobile. Q. Well, did you expect to get one at some time in the future? A. I did. Q. And was the reason you suspended it because you wanted it to go back when you did get another one.? A. That is right. Q. Well, now, you have told us that you asked Mr. Minault about insurance coverage. Why did you ask him about insurance coverage on the 7th of July? . . . A. Because if my wife or any member of my family were going to ride or drive in that car, I would never have permitted it had there not been complete coverage on the automobile. Q. Did you call up, prior to the time that your wife went to Concord on the next day, did you call your agency with reference to your policy which was in suspense? A. I did not. Q. Why didn't you? A. Because the car was still not mine." Again with reference to the agreement whereby Mrs. Detscher was to use the car the record contains the following questions and answers: "Q.

What conversation did you have about going to Concord and drawing money out of the bank and registering the car? Can you recall that? A. Yes. That my wife would drive that car to Concord, draw monies, wire them through Western Union. I mean wire them to Pottstown, Pennsylvania, to Minault, at which time she would register the car, change the plates and return to Wolfeboro. Q. What, if anything, did Mr. Minault say to that plan? A. It was very agreeable to him. It was to his advantage because— Q. What did he say? I am asking what his conversation was as you can best recall it. A. That was, that is fine. I don't remember the exact wording, but words to the effect that it was, he was in favor of it; willing to loan us his automobile with his plates and his coverage on the car."

It seems unnecessary to review the record further. There was evidence to sustain the finding that title had not passed and the plaintiff's position, in effect that the jury must accept its version and the inferences therefrom, cannot be maintained. The exceptions to the denial of the motions to withdraw the issue of title from the jury and for a directed verdict in the plaintiff's favor are overruled.

The plaintiff also excepted to the admissibility of evidence mentioning insurance and in general bearing on what the parties thought with regard to whether the plaintiff company covered the car at the time of the accident. However, the fact of insurance was unavoidably in the case by the plaintiff's act in bringing this suit for a declaratory judgment. Counsel agreed in chambers that to qualify the panel the Court must tell them who the parties were. No objection was made to an answer in Minault's deposition when it was read to the jury concerning his coverage by the plaintiff and it appears the Court correctly ruled that the objection which the plaintiff finally made to the mention of insurance in his answer came too late. Further, evidence of the state of mind of the parties relating to the question of intent which controlled the passage of title was "indispensable for its legitimate purpose," to which the Court limited its effect, and was admissible. *Menard* v. *Cashman*, 93 N. H. 273. The plaintiff therefore takes nothing by these exceptions.

Turning now to the exceptions to argument we find them without merit. What we have said already disposes of those relating to the mention of insurance and the state of mind of the parties bearing on their intent. Other exceptions were to reasonable inferences from the evidence which counsel were properly allowed to argue. The plaintiff also claims he was prejudiced by violations of the law of the trial limiting the use of the letter written by Minault to the Pennsyl-

vania Secretary of Revenue to the purpose of impeaching Minault's credibility only. Not only did defendant's counsel expressly state upon plaintiff's objection that he was "referring to it [the letter]to affect the credibility of Mr. Minault" but the Court repeatedly so instructed the jury and later impliedly found in denying the plaintiff's motions to set aside the verdict that the misuse of this evidence, if any, was not prejudicial. We discover nothing in the record to warrant upsetting this conclusion and the plaintiff's exceptions to argument are overruled.

The plaintiff finally contends that the charge as given was erroneous and that the Court erred in refusing to grant numerous requests. Among these upon which the plaintiff places special emphasis is No. 25 which reads as follows: "Unless you find that Detscher and Minault definitely agreed, about the time of the delivery of the bill of sale, that title did not pass until payment, you must answer the question in the affirmative." It contends that this request would have directed the jury's attention to the fact that for the defendants to prevail the jury must find both Minault and Detscher "specifically intended and agreed" at the time of the delivery of the bill of sale that the passage of title should be postponed to the time the money was paid. No such rigidity of findings is required. The Court's charge, in effect, that the burden was on the defendants to show on all of the evidence that the parties did not intend title to pass "until the money was sent . . . to Mr. Minault or at least at some time after the accident," covered the situation and the plaintiff takes nothing here.

Many of the other requests were given in different phraseology than that demanded by the plaintiff but the principle that the Court may choose its own language is too fundamental to require extended citation. *Cousins* v. *Roy, ante,* 126. Still other requests stress selected portions of the evidence and again it is established that such need not be given. *O'Brien* v. *Public Service Company,* 95 N. H. 79, 82, and cases cited. A few requests asked the Court to charge upon points not raised and this also is not required. *Lynch* v. *Sprague,* 95 N. H. 485, 491; *Beaudin* v. *Company,* 94 N. H. 202, 206, 207. Taken as a whole we believe the charge stated the law correctly and that it is reasonably certain the jury understood it. The exceptions thereto are accordingly overruled. *McLeod* v. *Carparello,* 95 N. H. 343, 344, and cases cited. The order is

*Exceptions overruled.*

LAMPRON, J., did not sit: the others concurred.